BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JOSEPH M. ALIOTO JR. (CABN 215544)
Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Joseph.Alioto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    *v.*<br><br>RICARDO MANUEL DURAN,<br><br>    Defendant. | Case No. 16-CR-437 JST<br><br>UNITED STATES' SENTENCING MEMORANDUM |

**INTRODUCTION**

Ricardo Manuel Duran is before the Court for sentencing after pleading guilty to being a felon in possession of a firearm. Mr. Duran was an active Norteño gang member at the time of the offense in this case. Just one month before committing the crime, gang leaders had "appointed [him] the voice for the hood." Mr. Duran wielded his power by relaying gang threats to use "weaponry" on those who refused Norteño (or *Nuestra Familia*) directives. During that same time period, Mr. Duran posted pictures of himself holding the gun charged in this case, bragging that it "stay on a niggaz hip," noting there are "real shooterz out here." These facts do not square with Mr. Duran's claims that he had turned his life around and was carrying the firearm only for protection from people in "his past." The violence of gang life was

UNITED STATES' SENTENCING MEMORANDUM
16-CR-437 JST

not a thing of his past.

The Presentence Investigation Report ("PSR") correctly calculated Mr. Duran's total offense level at 15 (PSR ¶¶ 10-20), criminal history category VI (PSR ¶¶ 32-34), and resulting guideline range of 41 to 51 months (PSR ¶ 76). The United States agreed pursuant to Rule 11(c)(1)(B) to recommend a sentence of 41 months. The probation office agrees with that recommendation. A sentence of 41 months is amply justified given the facts of this case, and a below-guideline sentence would send the wrong message to a man who continues to flout the law and who refuses to change.

## DISCUSSION

Mr. Duran, 34, has been convicted of nine crimes. (PSR ¶¶ 23-31.) His earliest conviction was in 2002, when he was just 18 years old. But, unlike those who learn from their youthful mistakes, almost half of Mr. Duran's convictions are from the past three years. The same pattern emerges in Mr. Duran's "Other Criminal Conduct": seven of his nine arrests are from after he turned 30. (PSR ¶¶ 35-43.) It is as though Mr. Duran ignores the lessons of his past.

Other signs reflect his refusal to be deterred. For instance, Mr. Duran has been committing the same crimes, without remorse or deterrence, for the past two decades. The clearest example is Mr. Duran's fondness for stealing vans, which he has been doing regularly for 13 years. He stole a van in 2002 (PSR ¶23) and was a passenger in a stolen van again in 2006 (PSR ¶ 24). He was punished severely for those crimes, but he remained undeterred. In 2014, he was arrested driving a car with registration tags that did not match the vehicle, and he was sentenced to four months in jail. (PSR ¶ 28.) Almost as soon as he got out, Mr. Duran stole another van two months later. (PSR ¶ 29.) Incredibly, even while that case was still pending, Mr. Duran stole yet another van. (PSR ¶ 41.) He was sentenced for that conduct in May, 2015 (PSR ¶¶ 41, 29), but that did not stop him from stealing *another* car, seven months later. (PSR ¶ 42.) In all, the PSR recounts six separate incidents of stolen cars. From 2014 to 2016, Mr. Duran was jailed for stealing four cars in less than two years. Yet, he keeps on doing it. Even in the face of negative reinforcement, Mr. Duran continues to commit the conduct. Of greatest concern is that some of that conduct is violent.

Mr. Duran is a dangerous person, perhaps even more so when he is using drugs. In May 2002, he led CHP on a 100-mph chase that resulted in serious injuries to bystanders. (PSR ¶ 23.) He was

UNITED STATES' SENTENCING MEMORANDUM
CR 16-CR-437 JST                              2

involved in a Hit and Run in 2006. (PSR ¶ 24.) He led officers on another vehicle chase in 2010. (PSR ¶ 26.) He has battered his girlfriend and left her injured (PSR ¶ 37); he has resisted arrest (PSR ¶ 46); and he has inflicted corporal punishment on a spouse (PSR ¶ 48). In just the past two years, Mr. Duran has been found with shotgun shells (PSR ¶ 41), a switchblade (PSR ¶ 50), ammunition (PSR ¶ 51), and now a .380 caliber pistol.

While Mr. Duran's criminal past and refusal to be deterred themselves merit at least a low-end sentence in this case, the most disturbing part of Mr. Duran's case is his very recent and active involvement in a dangerous gang, combined with his stubborn refusal to withdraw from it.

This case was originally charged by the state in May, 2016. (PSR ¶ 31.) The case resolved the next month. (PSR ¶ 31.) The court sentenced him to a term of probation, perhaps believing Mr. Duran had changed his ways. The probation term included time spent at "Men of Valor," a counseling program for men. However, consistent with his past, within four months, Mr. Duran was arrested with ammunition and drugs. (PSR ¶ 51.) To emphasize, that occurred *after* the offense conduct in this case. Moreover, even while he was enrolled at Men of Valor, Mr. Duran was actively functioning as a Norteño leader out in the streets. He did nothing to change his ways.

In the PSR, Mr. Duran told his probation officer that "at the time of my arrest, I was actually accomplishing so much. I made so much change in my life but it all went to waste." (PSR ¶ 9.) In truth, at the time of his arrest, Mr. Duran was organizing gang activity for the *Nuestra Familia*, relaying threats of violence from top gang leaders. One example is a social media post from April 10, 2016 (less than one month before his offense) in which Mr. Duran announced:

> I've been in communication with some carnals[1] incarcerated in da state[,] those in command of our jurisdiction[.] I've been appointed the voice for the hood and directed to have a one time sit down with some influentials from da hoggs[,] and both sides are given a verbal and directed to cease fire[.] [A]nyone after then, w[h]en it does occur, will be alleviated via weaponry[,] and that's on the streets to set an example[.] This is directly from the top N[uestra] F[amilia]. ALL WILL COMPLY.

(PSR ¶ 56.)

Mr. Duran also told the probation officer that he had the gun for protection from people "in his

---

[1] A "carnal" is a member of the *Nuestra Familia*, the leadership wing of all Norteño gangs. A "carnal" is a high-ranking member of the gang with authority over all Norteños on the street.

past." (PSR ¶ 9.)  But if that were true, Mr. Duran would not have posted a picture of himself with the gun on Facebook, with the caption "It stay on a niggaz hip … real shooterz out here."  Nor would he have posted a photograph of himself with a fist in a trigger-ready position, menacingly aiming a would-be gun at the camera, showing off the "187" tattoo on his trigger finger (187 refers to the California Penal Code section for murder):

This is not the image of a reformed man seeking protection from his past.  It is the image of a man who thrives on intimidation, who refuses to change even after countless lenient sentences, and who rather than growing out of his criminality, appears to be growing into it.

**CONCLUSION**

The United States respectfully recommends the Court sentence the defendant to 41 months' imprisonment, a three-year term of supervised release, and a special assessment of $100.  It further requests the Court forfeit from the defendant the firearm and ammunition in this case.

Dated:  October 2, 2017                                    Respectfully Submitted,

BRIAN J. STRETCH
United States Attorney

*/s/ Joseph M. Alioto Jr.*

JOSEPH M. ALIOTO JR.
Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM
CR 16-CR-437 JST                    4